UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---

RYAN O'DELL,

    Plaintiff,

v.

CORESITE REALTY CORPORATION, MICHAEL MILLEGAN, ROBERT G. STUCKEY, PAUL E. SZUREK, JEAN A. BUA, KELLY C. CHAMBLISS, MICHAEL R. KOEHLER, DAVID A. WILSON, and PATRICIA L. HIGGINS,

    Defendants.

---

Case No. _____

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.    This is an action brought by Plaintiff against CoreSite Realty Corporation ("CoreSite or the "Company") and the members CoreSite board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of CoreSite by affiliates of American Tower Corporation ("American Tower").

2.    Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on November 23, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Appleseed Merger Sub LLC, a wholly owned subsidiary of Appleseed Holdco LLC ("Holdco"), a wholly owned subsidiary of American Tower, will merge with and into CoreSite, with CoreSite continuing as the surviving corporation and as a wholly owned subsidiary of Holdco (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated November 14, 2021 (the "Merger Agreement"), each CoreSite common share issued and outstanding will be converted into the right to receive $170.00 per share in cash (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of CoreSite's outstanding common stock and will expire on December 27, 2021 (the "Tender Offer").

3.     Defendants have now asked CoreSite's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) CoreSite's financial projections relied upon by the Company's financial advisor, Evercore Group L.L.C. ("Evercore") in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the financial advisors. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as CoreSite stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to CoreSite's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391. Among other things, Holdco, Appleseed OP Merger Sub LLC, American Tower, and CoreSite L.P. are Delaware entities.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of CoreSite common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Michael Millegan has served as a member of the Board since February 2021.

11. Individual Defendant Robert G. Stuckey has served as a member of the Board since September 2010.

12. Individual Defendant Paul E. Szurek has served as a member of the Board since September 2016 and is the Company's President and Chief Executive Officer.

13. Individual Defendant Jean A. Bua has served as a member of the Board and since May 2017.

14. Individual Defendant Kelly C. Chambliss has been a member of the Board since September 2016.

15. Individual Defendant Michael R. Koehler has served as a member of the Board since September 2010.

16. Individual Defendant David A. Wilson has served as member of the Board since September 2010.

17. Individual Defendant Patricia L. Higgins has served as a member of the Board since August 2020.

18. Defendant CoreSite is incorporated in Maryland and maintains its principal offices at 1001 17th Street, Suite 500, Denver, CO 80202.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "COR."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.      The Proposed Transaction**

21.     CoreSite delivers secure, reliable, high-performance data center, cloud access and interconnection solutions to a growing customer ecosystem across eight key North American markets. More than 1,375 of the world's leading enterprises, network operators, cloud providers, and supporting service providers choose CoreSite to connect, protect and optimize their performance-sensitive data, applications and computing workloads. Our scalable, flexible solutions and 460+ dedicated employees consistently deliver unmatched data center options, all of which leads to a best-in-class customer experience and lasting relationships.

22.     On November 15, 2021, CoreSite and American Tower announced the Proposed Transaction:

> BOSTON & DENVER--(BUSINESS WIRE)--American Tower Corporation (NYSE: AMT) ("American Tower") and CoreSite Realty Corporation (NYSE: COR) ("CoreSite") today announced that they have entered into a definitive agreement through which American Tower will acquire CoreSite for $170.00 per share in cash. The total consideration for the transaction, including the assumption and/or repayment of CoreSite's existing debt at closing, is approximately $10.1 billion. The transaction, which was unanimously approved by the boards of directors of both companies, is expected to create a differentiated, comprehensive and interconnected communications real estate platform optimally positioned to benefit from the convergence of wireline and wireless networks amid accelerating global 5G deployments.
>
> CoreSite, which as of Q3 2021 consisted of 25 data centers, 21 cloud on-ramps and over 32,000 interconnections in eight major U.S. markets, generated annualized revenue and Adjusted EBITDA of $655 million and $343 million, respectively, in Q3 2021. CoreSite has averaged double-digit annual revenue growth over the past five years and is led by a seasoned management team that has established leading positions and a critical presence with cloud service providers, positioning the business well for future organic growth. American Tower expects to leverage its strong financial position to further accelerate CoreSite's attractive development pipeline in the

U.S., while also evaluating the potential for international expansion in the data center space.

The transaction is also expected to be transformative for American Tower's mobile edge compute business in advance of the proliferation of 5G low-latency applications throughout the cloud, enterprise and network ecosystems, establishing a converged communications and computing infrastructure offering with distributed points of presence across multiple edge layers. With increased scale and a broadened, more comprehensive offering, American Tower and CoreSite expect the combined company to be well-positioned to address evolving customer needs through an enhanced value proposition for network and cloud providers, service integrators and enterprise customers.

By combining the capabilities, talent and resources of American Tower and CoreSite, the combined company will be even better equipped to deliver superior service and expanded solutions to customers. This transaction brings together American Tower's wireless connectivity at the mobile edge and CoreSite's highly interconnected data center facilities at the core edge to create an extended edge for our customers that can seamlessly support high performance, low-latency applications. In addition, with American Tower's global footprint, the combined company will be positioned to support customer's needs in additional markets.

Tom Bartlett, American Tower's Chief Executive Officer stated, "We are in the early stages of a cloud-based, connected and globally distributed digital transformation that will evolve over the next decade and beyond. We expect the combination of our leading global distributed real estate portfolio and CoreSite's high quality, interconnection-focused data center business to help position American Tower to lead in the 5G world. As the convergence of wireless and wireline networks accelerates and classes of communications infrastructure further align, we anticipate the emergence of attractive value creation opportunities within the digital infrastructure ecosystem. We look forward to welcoming CoreSite's talented team to American Tower and working together to capitalize on those opportunities to drive enhanced long-term value creation for our customers and shareholders as we continue to connect billions of people across the globe."

CoreSite's Chief Executive Officer, Paul Szurek, stated, "We are excited to partner with American Tower to expand its communications infrastructure ecosystem and accelerate its edge

computing strategy through the addition of CoreSite's differentiated portfolio of U.S. metro data center campuses. The combined company will be ideally positioned to address the growing need for convergence between mobile network providers, cloud service providers, and other digital platforms as 5G deployments emerge and evolve. In addition, we expect the enhanced scale and further geographic reach to provide a platform for the combined company to accelerate its growth trajectory and expand into additional U.S. metro areas, as well as internationally, leveraging American Tower's extensive presence across the globe. CoreSite's outstanding team, interconnection platform and data center campus portfolio are a highly complementary fit with American Tower's existing communications sites, and we believe this partnership delivers significant value to CoreSite's stockholders and will create an exciting new chapter for our customers, employees and partners."

The transaction is anticipated to be modestly accretive to American Tower's AFFO per Share initially, and increasingly accretive over time, and is expected to close by the end of 2021, or shortly thereafter. Under the terms of the definitive agreement, American Tower, through a wholly owned subsidiary, will commence a tender offer for all of the shares of common stock of CoreSite, which will be followed by a merger to acquire any untendered shares for the same price payable in the tender offer. The tender offer is subject to the tender of at least a majority of the outstanding shares of common stock of CoreSite and certain other customary conditions. CoreSite plans to declare and pay its fourth quarter dividend during the fourth quarter of 2021 and no later than the close of the transaction.

American Tower intends to finance the transaction in a manner consistent with maintaining its investment grade credit rating and has obtained committed financing from J.P. Morgan. J.P. Morgan is serving as lead financial advisor to American Tower, who is also being advised by CDX Advisors. Cleary Gottlieb Steen & Hamilton LLP is serving as principal legal advisor to American Tower. Evercore is serving as sole financial advisor to CoreSite and Wachtell, Lipton, Rosen & Katz is serving as its principal legal advisor.

* * *

23. It is therefore imperative that CoreSite's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     The Materially Incomplete and Misleading Solicitation Statement**

24.     On November 23, 2021, CoreSite filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Company Financial Projections*

25.     The Solicitation Statement fails to provide material information concerning financial projections by CoreSite management and relied upon by Evercore in its analyses. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company.  Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that CoreSite management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Projections prepared by Company management for CoreSite for fiscal years 2021 through 2025, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (a) Adjusted EBITDA; (b) FFO/ Share; (c) AFFO / Share; and (d) Unlevered Free Cash Flows, but fails to disclose: (i) the line items used to calculate the non-GAAP measures or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G.

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

29. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Evercore's Financial Analyses*

30. With respect to Evercore's *Precedent Transaction Analysis*, the Solicitation Statement fails to disclose: (i) the multiples and metrics of the transactions observed by Evercore in the analysis; and (ii) the basis for applying the illustrative ranges of multiples of LTM Adjusted EBITDA multiples of 24.0x to 28.0x, NTM Adjusted EBITDA multiples of 21.0x to 26.0x and NTM AFFO per share multiples of 20.0x to 29.0x.

31. With respect to Evercore's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the ranges of terminal values for the Company as of December 31, 2025; (ii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 2.00% to 2.75%; (iii) the inputs and assumptions underlying the use of terminal multiples ranging from 22.0x to 26.x; (iv) the discount rates used by Evercore; (v) CoreSite's net debt as of December 31, 2021; and (vi) the fully diluted number of Company shares as of December 31, 2021.

32. With respect to Evercore's *Analysts' Price Targets Analysis*, the Solicitation Statement fails to disclose the research analysts selected and the corresponding price targets prepared and published by the selected research analysts.

33. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer,

Plaintiff will be unable to make a fully-informed decision regarding whether to tender his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

36. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

38. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

39. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

40. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

41. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Violations of Section 14(d)(4) of the Exchange Act and**
**Rule 14d-9 Promulgated Thereunder**
**(Against All Defendants)**

42. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

43. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

44. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

45. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

46. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

47. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

### COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of CoreSite within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of CoreSite, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of CoreSite, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of CoreSite, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

52.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 3, 2021 **RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com
Email: hwm@rl-legal.com

**OF COUNSEL:**

**MELWANI & CHAN LLP**
Gloria Kui Melwani
1180 Avenue of the Americas
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*